FILED
JUN 7 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EPONINE J. SMITH FREDERIC,

    Plaintiff,

v.

NORTHWESTERN MEMORIAL HOSPITAL,

    Defendant.

Case No. 04 C 4443

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Eponine J. Smith Frederic (hereinafter, the "Plaintiff") filed suit against Defendant Northwestern Memorial Hospital (hereinafter, the "Defendant") based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Americans with Disabilities Act of 1990 (ADA), *Id.* § 12101. Before the Court is Defendant's Motion to Dismiss Counts I through III and VI, and Motion for Judgment on the Pleadings on Counts IV and V. For the following reasons, Defendant's Motions are denied in part and granted in part.

### I. BACKGROUND

Plaintiff alleges the following facts in her Second Amended Complaint (hereinafter, the "Complaint"). Plaintiff was a computer support professional in Northwestern Memorial Hospital's information technology department. She began her employment on October 16, 2000. In May 2000, Plaintiff shattered her ankle in a

bike accident, and had three permanent metal plates with nine screws surgically affixed to her ankle. Since her accident, she has been in pain and has had trouble walking.

In August 2001, Plaintiff was transferred to another information technology unit under the supervision of Mary Beth Jezuit ("Jezuit"). At that time, she sought further medical attention for her ankle injury and her doctor issued restrictions on lifting objects more than 10 pounds. She informed Jezuit of her restrictions, who then required Plaintiff to visit the hospital's employee health station where she received identical instructions. Even so, she continued to be required to walk around the hospital campus by foot and move computer equipment for service calls. Plaintiff continued to attend physical therapy. In October and November 2001, Plaintiff became ill and only then did Jezuit accommodate Plaintiff's work restrictions by allowing Plaintiff to provide call support for clients rather than in-person visits. Jezuit continued to require Plaintiff to make visits to the employee health center.

Sometime in early 2002, a human resource consultant contacted Plaintiff and informed her that she could no longer work at the phone help desk and told her to take unpaid Family and Medical Leave ("FML"). She returned to work in March 2002 and felt that she received a disproportionate amount of work compared to other employees in her position. She expressed concerns over the amount

of physical work she was required to do, but felt that she never received a satisfactory explanation.

In August 2002, Plaintiff began reporting to Dan Curran ("Curran"), supervisor in the newly created Desktop Support Service division. She continued to feel that the hospital made no attempt to accommodate her physical restrictions. Further, she was criticized in her reviews for seeking assistance with lifting and other activities.

During the period when Curran was her supervisor, Plaintiff alleges that he improperly touched her back, upper arm, knees, and breast; she attended closed door private meeting with Curran, despite the fact that she informed him she was uncomfortable; made a reference to the size of her chest; used the slang word "hos" when discussing company policy with her; kept an electronic picture of Plaintiff that emphasized her cleavage; and touched her knees with his knees when in meetings together. Plaintiff requested that Curran's supervisor, Mike Carper ("Carper"), attend her meetings with Curran, but he did not.

In December 2002, Plaintiff met with Curran and another employee who told her that she again would have to take forced FML due to her lifting restrictions. They required her to leave the hospital immediately. Plaintiff filed an ADA EEOC charge (hereinafter "EEOC Charge I") while on leave based on her

disability. Plaintiff returned to work in March 2003 and she alleges that the sexual harassment continued.

In May 2003, Plaintiff could not get access to certain hospital servers required for her work. In addition, human resources informed her that Curran never filled out the appropriate paperwork for her access or for her to receive insurance, among other things. Plaintiff e-mailed Curran on May 5, 2003 to express her discontent. Curran then met with Plaintiff on May 8, 2003 to verbally warn Plaintiff about her "unprofessional" e-mail communications and to discuss her average number of "closed tickets per day." (For the present purposes, the Court assumes that a "closed ticket" is a completed customer service call, either in-person or telephonic.) Plaintiff alleges that Curran purposefully discounted her actual closing average of 5.4 tickets to 4.9 tickets. On July 18, 2003, Plaintiff filed another EEOC charge (hereinafter "EEOC Charge II").

Plaintiff was terminated without warning on September 9, 2003 by hospital management. They informed her at the time that her termination was due to lack of funds. Plaintiff alleges that a short time later, her exact position was advertised and filled. Based on her termination, Plaintiff filed a third EEOC charge (hereinafter "EEOC Charge III"). Plaintiff's complaint includes charges of retaliation (Count I), retaliatory discharge (Count II), hostile work environment (Count III), discrimination based upon

disability (Count IV), failure to reasonably accommodate disability (Count V), and intentional infliction of emotional distress (Count VI).

## II. **MOTION TO DISMISS COUNTS I THROUGH III AND VI**

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss under either 12(b)(6) or 12(b)(1), a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.; Reuth v. U.S. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)(per curiam). A motion to dismiss will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B. Discussion

#### 1. *Counts I through III*

Plaintiff's First Amended Complaint arose from her three EEOC Charges filed on January 24, 2003; July 18, 2003; and April 15, 2004. She originally attached EEOC Charges I and III and the subsequent "right to sue" letters to her brief in response to Defendant's motion to dismiss. The Court granted Plaintiff's

unopposed motion to amend so that all three charges and "right to sue" letters are now incorporated into Plaintiff's complaint. Defendant argues that Counts I through III are barred because they were not sufficiently included in her EEOC charges.

Defendant argues that several of the allegations included in Plaintiff's complaint are foreclosed from consideration because they are "outside the ambit of the predicate EEOC charge. . . ." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In general, a Title VII plaintiff may not bring claims in a lawsuit that were not included in her EEOC charge. *Id.* This rule serves two purposes: (1) permitting the EEOC to investigate claims, so that there will be an opportunity before the plaintiff files suit "to settle the dispute through conference, conciliation and persuasion"; and (2) giving the employer "some warning of the conduct about which the employee is aggrieved." *Id.* Nevertheless, a Title VII plaintiff need not allege in her EEOC charge each and every fact underlying each claim in his complaint. *Id.* Rather, all claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge" and can reasonably be expected to grow out of such allegations. *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)(en banc)(citation omitted)). Claims "are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint

must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500-01 (7th Cir. 1994). "The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

Plaintiff's EEOC Charge I deals with discrimination based on disability and reasonable accommodation under the ADA from the period between July 1, 2002 through January 24, 2003. The Charge actually references specific instances of conduct, including her forced leave of absence in 2002 by supervisor Jezuit.

EEOC Charge II is a bit more complex. Plaintiff checked the race, retaliation, sex, disability, and national origin discrimination boxes. In the body of the charge, she references her earlier disability charge and that "[s]ince filing the charge, I have been harassed by my supervisor." She then discusses that she applied for several positions that "would provide a reasonable accommodation for my disability," but "was not selected for any position." Plaintiff adds a conclusory statement that she has been discriminated against because of national origin, race, sex, disability, and retaliation.

EEOC Charge III deals specifically with Plaintiff's termination. She also generally reiterates the earlier claims in her other two charges.

### a. *Retaliation*

Count I involves retaliation. Defendant concedes that in EEOC Charge II Plaintiff sufficiently alleged retaliation based on filing EEOC Charge I. Defendant argues, however, that any allegations related to retaliation arising from internal complaints are not reasonably related to Plaintiff's EEOC Charge II, or any other charge. Defendant is correct that in EEOC Charges II and III, Plaintiff *solely* and specifically references retaliation based on the filing of EEOC Charge I pursuant to ADA violations. Plaintiff does not state that she also internally complained to supervisors or others at the hospital. However, through an investigation, it is reasonable that the EEOC would have discovered that in addition to filing an EEOC Charge, Plaintiff internally complained to supervisors about her disability and the hospital's failure to accommodate her. Both types of complaints involve the same underlying conduct related to her disability and both involve her immediate supervisors. Accordingly, Defendant had constructive notice of Plaintiff's retaliatory complaints.

To the contrary, any internal complaints regarding sexual harassment -- a discrete and completely different discrimination claim in which many of the allegations occurred sometime after the disability issues began -- would not be reasonably related to the allegations in her EEOC charges because they do not share a similar

factual basis. Those allegations are now foreclosed from consideration.

### b. Retaliatory Discharge

Defendant's argument to dismiss Count II is unavailing. Count II involves retaliatory discharge, which is the underlying basis for Plaintiff's EEOC Charge III and explicitly mentioned in the charge. Plaintiff therefore states a valid claim.

### c. Sexual Harassment

Defendant argues that Count III involving sexual harassment in a hostile work environment also is procedurally barred. Plaintiff's EEOC Charge II -- the only charge relevant to this claim -- checks both the retaliation and sex discrimination boxes and states that "I filed a charge with the EEOC. . . . Since filing the [ADA] charge, I have been harassed by my supervisor. For example, my supervisor requires me to meet with him alone. . . . I believe I have been discriminated against because of my . . . sex (female). . . ." Defendant asserts that "retaliation during employment and other forms of discrimination, including harassment based on sex, are separate and distinct wrongs such that 'an administrative charge of one fails to support a subsequent civil suit for the other.'" (Def. Br. at 6 (quoting *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 259 (7th Cir. 1996)). Plaintiff's complaint alleges more than seven specific instances of repeated sexually harassing conduct by supervisor Curran and other co-workers, which

includes being required to meet alone with Curran. Even when reading EEOC Charge II liberally, the Court cannot construe her statements to embody a factual basis for both retaliation and sexual harassment claims. Her charge specifically references retaliatory action and adds one example in support of the claim. From the language of this charge, neither the EEOC nor Defendant would be on even constructive notice regarding the many alleged instances of sexual harassment. *See Cheek*, 31 F.3d at 500-01 (barring a sex discrimination claim where the factual basis was not sufficiently pled in the body of the EEOC charge). An EEOC investigation would only probe the retaliation claim by looking into instances of harassment that possibly could constitute an adverse action against Plaintiff.

Unfortunately for Plaintiff, the sexual harassment claim is not sufficiently stated in her charge in light of the retaliation context and her failure to include any sex related description of conduct or other facts on which the sexual harassment charge is predicated. The example of being required to meet alone with her supervisor lends no inference of conduct specifically directed at Plaintiff because she is female. *See Heuer v. Weil-McLain*, 203 F.3d 1021, 1022-23 (7th Cir. 2000). Even though she "is not professionally trained as a lawyer," she can and must explain the factual basis "with some degree of specificity the conduct she considered to be discriminatory." *Cheek*, 31 F.3d at 502.

Plaintiff is barred from bringing this claim because checking the box and stating that "I have been discriminated against because of my . . . sex" is not enough.

Accordingly, Defendant's Motion is granted in part and denied in part on Count I, denied on Count II, and granted on Count III.

### 2. Count VI -- Intentional Infliction of Emotional Distress

Defendant contends that Count VI for IIED should be dismissed for lack of subject matter jurisdiction because it is preempted by the Illinois Human Rights Act ("IHRA"). *See* 775 ILCS § 5/8-111(C); *see also id.* §§ 5/2-102(D), 5/6-101(A). Under the IHRA, "torts that are 'inextricably linked' to civil rights violations must be adjudicated before the Illinois Human Rights Commission." *Sunglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003). A tort claim is inextricably linked to a civil rights violation and preempted by the IHRA if there "is no independent basis for imposing liability apart" from the Act itself. *Mindell v. Kronfeld*, No. 03 C 4063, 2004 WL 1322931, at *8 (N.D. Ill. June 9, 2004). However, "where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

Plaintiff suggests that the "inextricably linked" rule "has been misapplied by both state and federal courts in Illinois,

resulting in the dismissal of many tort claims that should have been allowed to proceed to trial." (Pl. Resp. at 19). Plaintiff is well aware that the Court is bound by the Seventh Circuit, absent a contrary Supreme Court decision. Plaintiff's argument regarding the misapplication of the preemption rule is unpersuasive because several of the cases Plaintiff cites to exemplify her point are from the Seventh Circuit. (Pl. Resp. at 21; *see, e.g.*, *Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000)).

The conduct alleged to have caused Plaintiff's extreme emotional distress is primarily the allegations relating to Curran's sexual harassment of Plaintiff (Pl. Res. at 21) -- such statements and conduct are offensive to Plaintiff to the extent that they are discriminatory based upon her sex and are identical to the factual allegations of her Title VII claim. *See Quantock v. Shared Mktg.*, 312 F.3d 899, 905 (7th Cir. 2002)(affirming dismissal of plaintiff's IIED claim when supported solely by allegations identical to the Title VII **sex** claim). Plaintiff's IIED claim thus brings no independent tort or claim for relief, and her IIED claim is thus inextricably related to her sexual harassment claim, which the Court dismissed, see *supra* Part II.B.2. *See Johnson v. Chi. Bd. of Educ.*, No. 00 C 1800, 2002 WL 1769976, at *5 (N.D. Ill. Aug. 1, 2002)(and cases cited therein). "As such, there is no independent ground for relief." *Eruteya v. City of Chicago*, No. 04 C 1482, 2005 WL 563213, at *8 (N.D. Ill. Mar. 9, 2005).

Consequently, Plaintiff's IIED claim is preempted by the IHRA and the Court lacks jurisdiction over the IIED claim. The Court need not address Defendant's other 12(b)(6) argument because Defendant's motion to dismiss Count VI is granted on jurisdictional grounds.

### III. **JUDGMENT ON THE PLEADING OF COUNTS IV AND V**

#### A. **Legal Standard**

Judgment on the pleadings is appropriate under Federal Rule Civil Procedure 12(c) when viewing the facts in the light most favorable to the nonmoving party, and it is beyond a doubt that the nonmoving party cannot plead facts to support his cause of action. *United States v. Wood*, 925 F.2d 1580 (7th Cir. 1991). This motion is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).

#### B. **Discussion**

Counts IV and V of the complaint involve Plaintiff's alleged disability -- her ankle injury. Count IV is a discrimination claim and Count V is a reasonable accommodation claim. Allegations in Plaintiff's complaint describe that her injury makes her "unable to walk without substantial impairment and incredible pain and was ordered by her physicians to limit lifting and movement of objects over 10 pounds." (Comp. ¶¶ 16, 19). To prevail on claims arising from an alleged disability Plaintiff must show that (1) she was disabled within the ADA's definition; (2) she was able to perform

her job's essential functions with or without reasonable accommodation; and (3) she suffered adverse employment action because of her disability. *Nese v. Julian Nordic Construction Co.*, 405 F.3d 638, 641 (7th Cir. 2005).

### 1. *Disability Under the ADA and Plaintiff's Complaint*

Defendant argues that Plaintiff cannot show that she is actually disabled, as defined under the ADA. 42 U.S.C. § 12102(2) (disability is "a physical or mental impairment that substantially limits one or more of the major life activities" with "a record of such impairment" or is "regarded as having such an impairment"). Defendant states that when considering "the nature and severity of the impairment," Plaintiff's ankle injury does not qualify as a disability. See 29 C.F.R. § 1630.2(j). Defendant's argument focuses on one particular word in Plaintiff's complaint. The complaint states that "[a]fter [Plaintiff] became seriously ill and developed a fever and high heart rate, . . . Ms. Jezuit finally accommodated [Plaintiff's] *modest doctor's restrictions* by allowing [Plaintiff] to provide call agent support. . . ." (Comp. ¶ 20 (emphasis added)). Defendant contends that the use of the term "modest" makes it axiomatic that Plaintiff's injury is not a severe or substantial enough impairment to limit one of Plaintiff's major life activities. Defendant asserts that this admission has led

Plaintiff to plead herself out of court. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 928 (7th Cir. 2003).

The Court cannot agree with Defendant's characterization of the term "modest" in Plaintiff's complaint. Plaintiff's allegations are sufficient to state a claim under the ADA and the term "modest" does not undermine her allegations. Major life activities that must be substantially impaired include "walking, seeing, hearing, [and] performing manual tasks." 45 C.F.R. § 84.3(j)(2)(ii); *see also Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002) (finding that disabilities are long-term when the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives").

Plaintiff alleges throughout her complaint that her ankle injury was substantial by describing the results of her surgery, the pain and discomfort she continually feels, and her inability to run or exercise on treadmills. (Comp. ¶¶ 16, 60, 68). She also alleges that she has trouble walking and lifting by pointing to doctor restrictions on lifting over ten pounds. (*Id.* ¶¶ 16-19). Plaintiff then states that she can satisfactorily fulfill her job duties by phone contact, which accommodates her disability, rather than in-person contact, where she has to walk for periods of time and lift equipment over ten pounds to service clients. (*Id.* ¶¶ 20-22, 61, 69). The Court finds that Plaintiff's explanation that

"modest" refers to the reasonability of the accommodations necessary for her post-injury is sufficient in light of her other allegations. Accordingly, she has not pled herself out of court as Defendant contends, and the motion for judgment on the pleadings for Counts IV and V on the above ground is denied.

### 2. *Time-Barred Allegations*

Defendant's next argument focuses on the timeliness of several of Plaintiff's disability allegations. "In Illinois, a Plaintiff complaining of discriminatory treatment must file a complaint within 300 days of the alleged discrimination with the [EEOC]. 42 U.S.C. § 2000e-5(e)." *Saldana v. City of Chicago*, 972 F. Supp. 453, 455 (N.D. Ill. 1997) (citing *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)). The Court has reviewed the timeliness of all of Plaintiff's allegations and determines that the bulk of the allegations relating to Plaintiff's time under supervisor Jezuit are not actionable on her ADA claims.

Plaintiff filed EEOC Charge I on January 24, 2003. 300 days prior to the filing of her charge is approximately ten months or March 24, 2002. The charge states that the discrimination based on Plaintiff's disability began on July 1, 2002, which is within the 300-day period. However, the allegations in the complaint contradict such time frame. (See Comp. ¶¶ 18-22). Plaintiff alleges that on "September 18, 2001, [her supervisor] Jezuit refused to accept [Plaintiff's] doctor's restrictions and informed

[Plaintiff] that she would be required to continue to traveling [sic] around the Hospital campus by foot and moving computer hardware as requested. . . ." (*Id.* ¶ 18). She then discusses how she was forced to take unpaid FML "through late February of 2002 because the Hospital was unwilling to properly accommodate her disability." (*Id.* ¶ 22). These allegations all took place outside the 300-day period and led up to one discrete action, her forced FML leave.

Plaintiff also claims that upon returning to work in March 2002 until July 2002, she "received a disproportionate amount of work compared to other employees and in comparison to her previous workload." (*Id.* ¶ 23). These discrimination allegations occurred within the statutory time frame and were distinct actions that post-dated her returning from FML. Although some of Plaintiff's discrimination allegations that occurred under Jezuit's supervision were timely, the continuing violation doctrine, which "allows a plaintiff to get relief for a time-barred act by linking it with an act within the limitations period" does not apply to her other untimely allegations. *Saldana*, 972 F. Supp. at 457. Plaintiff cannot establish that her employer covertly followed a practice of discrimination over a period of time because the only application of this doctrine is where "it would be unreasonable to expect the plaintiff to sue before the 300 days had expired, such as when the plaintiff could recognize the actionable nature of the conduct only

in light of subsequent, additional events that occurred within the statutory time period." *Raymond v. City of Chicago*, 183 F. Supp. 2d 1060, 1067-68 (N.D. Ill. 2002).

The acts outside of the 300-day window are time-barred because there is not a continuing action. The single event of forced unpaid FML was a discrete act similar to being demoted, receiving a job transfer, or an admonishment. *See Daniels v. Fed. Reserve Bank of Chi.*, No. 98 C 1186, 2004 WL 419796, at *5-7 (N.D. Ill. Mar. 4, 2004)(explaining Seventh Circuit case law on the continuing violation doctrine and separate discriminatory acts). The Seventh Circuit has held that these events are discrete and not continuing acts, and the discriminatory or retaliatory character of those events should be apparent to the plaintiff at the time of the decision. *See id.* (citing *Place v. Abbott Labs*, 215 F.3d 803, 808 (7th Cir. 2000)).

Even though Plaintiff's time-barred allegations are not actionable under the ADA, they are still relevant to her disability claims. The facts can serve as background context for the development of Plaintiff's timely claims. *See id.* at *6. Therefore, they need not be stricken from her complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part on Count I, denied on Count II, and granted on Counts III and VI. Defendant's Motion for Judgment on the

Pleadings on Counts IV and V is granted with respect to particular time-barred allegations, but is denied with respect to judgment on the claims. Counts I, II, IV, and V remain.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 7, 2005